### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL BENSON, et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO.  5:20-cv-00229

HIGH ROAD OPERATING, LLC,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are cross-motions for summary judgment filed by Defendant High Road Operating, LLC, formerly known as American Petroleum Partners Operating, LLC ("Defendant"), (ECF No. 63), and Plaintiffs, (ECF No. 64).  For the reasons discussed more fully below, the Court **GRANTS** Defendant's Motion, (ECF No. 63), and **DENIES** Plaintiffs' Motion, (ECF No. 64).

#### I.    BACKGROUND

This matter arises out of a dispute concerning an oil and gas agreement between each respective Plaintiff and Defendant.  Between April 26, 2018, and May 11, 2018, Plaintiffs each signed the following documents: (1) Paid-Up Oil and Gas Lease ("Lease"), (2) Addendum to the Lease, (3) Order of Payment – Oil & Gas Lease Bonus ("Order of Payment"), and (4) Memorandum of Lease ("Memorandum").  (ECF Nos. 63-2, 63-3, 63-5, 63-4.)  Defendant submitted each Memorandum for recording in Ohio County, West Virginia on the following dates: May 10, 2018, May 25, 2018, June 6, 2018, June 12, 2018, and June 22, 2018.  (ECF No. 63-4.)

1

As each respective Lease, Memorandum, and Order of Payment are substantially the same, (*see* ECF No. 63-8 at 37:9-11), the Court will refer to these documents as applying generally to each Plaintiff.

The Lease required that Defendant, as lessee, pay Plaintiffs, as lessors, ten dollars ($10.00) "and other good and valuable considerations" in exchange for certain mineral rights.  (ECF No. 63-2 at 1.)  Among other provisions, the Lease allowed Defendant, as lessee, to surrender the Lease, "at any time . . . by tendering an appropriate instrument of surrender" to Plaintiffs, as lessors.  (*Id.* at 3.)  The Lease also acknowledges that Plaintiffs, as lessors, "agree[] that a Memorandum may be filed," by Defendant, as lessee, "detailing the relevant provisions of this Oil and Gas Lease."  (*Id.* at 4.)  While Plaintiffs signed and notarized the Lease, Defendant did not.  (*Id.* at 9.)  However, Defendant paid each Plaintiff ten dollars ($10.00) for "consideration for the execution of the above mentioned Oil and Gas Lease[.]"  (ECF No. 63-6.)

The Order of Payment, which was on Defendant's letterhead, required Defendant to tender an oil and gas lease bonus of $6,500 per net mineral acre in connection with the Lease to Plaintiffs.  (ECF No. 63-5.)  However, this bonus was "[o]n and subject to approval of the fully executed and notarized Oil and Gas Lease . . . by the management of [Defendant] . . . and upon and subject to further approval of [Plaintiffs'] title and rights thereunder by [Defendant][.]"  (*Id.*)  This bonus was to be tendered "within ninety (90) business days of the date of th[e] Order of Payment."  (*Id.*)  Plaintiffs also acknowledged that, if the title examination revealed they were "vested with less than the full and undivided 100% interest," the bonus amount would be "either (i) proportionately reduced," or "(ii) alternatively, [Defendant] may, at its sole option, void the Oil and Gas Lease in its entirety with notice to [Plaintiffs]."  (*Id.*)  Plaintiffs signed the Order of Payment, but there was not a line provided for Defendant's signature.  (*See id.*)

The Memorandum's stated purpose was "to indicate the existence of a PAID-UP OIL AND GAS LEASE," which was "effective for all purposes as of the date set out below[.]" (ECF No. 63-4.) It further provides that Plaintiffs, as lessors, and Defendant, as lessee, "have entered into that certain Lease," and have "executed, acknowledged, and delivered this Memorandum of Lease in accordance with W. Va. Code § 40-1-8[.]" (*Id.*) Additionally, the Memorandum states that the parties, "intending to be legally bound, hereby publish and give notice of the tenancy and estate(s) created, and certain of the rights granted by and obligations under the Lease as follows," and, *inter alia*, list that "[s]aid Lease shall be in force for a primary term of five (5) years from the effective date of the Lease. . . ." (*Id.*) Both Plaintiffs and Defendant signed and notarized the Memorandum. (*See id.*)

Defendant never tendered bonuses to Plaintiffs. (*See* ECF No. 63-8 at 37:20-21.) Then, between October 5, 2018 and April 18, 2019, Defendant sent each Plaintiff a document entitled "Surrender of the Oil and Gas Lease" ("Surrender"). (*See* ECF No. 63-9.) The Surrender, signed by Defendant's CEO, "release[d], relinquish[ed], surrender[ed]" Defendant from "any and all right, title, and interest whatsoever presently owned[.]" (*Id.*) Ultimately, Plaintiffs were able to enter into a replacement lease agreement with another company and secured $4,500 per acre for a bonus consideration. (ECF No. 65 at 7, 63-1 at 7.)

Plaintiffs initiated this action in the Northern District of West Virginia on October 19, 2020.[1] (ECF No. 1.) The Complaint states three causes of action for (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Slander of Title. (*Id.* at 8-10.)

---

[1] On November 6, 2020, the undersigned judge was designated and assigned to hear this case pursuant to 28 U.S.C. § 292(b).

3

Plaintiffs and Defendant both filed motions for summary judgment on Plaintiffs' breach of contract claim on November 9, 2021. (ECF Nos. 63, 64.) Both parties timely responded on November 23, 2021, (ECF Nos. 68, 69), and replied on November 30, 2021, (ECF Nos. 71, 72). As such, both motions are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Liberty Lobby, Inc.*, 477 U.S. at 248. "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks omitted); *Variety Stores, Inc.*, 888 F.3d at 659.

When faced with cross-motions for summary judgment, the Court applies the above standard and must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see also Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

When the principles of summary judgment are applied to contract interpretation, "only an unambiguous writing justifies summary judgment without resort to extrinsic evidence." *Goodman v. Resol. Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993) (citing *American Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)). "If a court properly determines that the contract is unambiguous on the dispositive issues, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Id.* On the other hand, where a court deems the contract ambiguous, a court may "examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis." *Washington Metro. Area Transit Auth. v. Potomac Inv. Prop., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (citing *Goodman*, 7 F.3d at 1126). However, if such extrinsic evidence "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id.*

### III.   ANALYSIS

Plaintiffs and Defendant both move the court to enter summary judgment in their favor on Count I of the Complaint for breach of contract, which alleges that Defendant breached the Lease by failing to tender the bonus payments. (ECF No. 1 at 8, ¶ 50.) "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits." *Volvo Const. Equip. N. Am. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)). In West Virginia, a claim for breach of contract, has four elements: "[1] the existence of a valid, enforceable contract; [2] that the plaintiff has performed under the contract; [3] that the defendant has breached or violated its duties or obligations under the contract; and [4] that the plaintiff has been injured as a result." *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009) (citing 23 Williston on Contracts § 63:1 (Richard A. Lord, ed., 4th ed. West 2009)).

Here, the second and fourth elements are undisputed. (*See* ECF No. 63-1 at 11.) Instead, the pending cross-motions raise fundamental issues related to the first and third elements. Specifically, Plaintiffs argue that (1) there was a valid and enforceable contract, and (2) Defendant breached by failing to pay the required bonus. (ECF No. 64.) Conversely, Defendant argues that (1) a valid and enforceable contract was never formed; (2) even if there was a contract, conditions precedent to performance were not satisfied; and (3) Defendant's obligation was discharged by a condition subsequent. (*See* ECF No. 63.) Each issue is addressed in turn.

A. *Valid and Enforceable Contract*

Whether a contract exists is generally a question of fact reserved for the jury, but the question may be removed from the jury's consideration when the plaintiff has failed to establish a *prima facie* right of recovery. *Thacker v. Peak*, 800 F. Supp. 372, 382–83 (S.D. W. Va. 1992) (citing Syl. Pt. 4, *Cook v. Heck's Inc.*, 342 S.E.2d 453 (W. Va. 1986)). For a valid and enforceable

6

contract to exist, West Virginia law requires "competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." *Ways v. Imation Enterprises Corp.*, 589 S.E.2d 36, 44 (W. Va. 2003) (citing Syl. Pt. 5, *Virginian Export Coal Co. v. Rowland Land Co.*, 131 S.E. 253 (W. Va. 1926)).

In this case, the parties disagree on whether there was mutual assent. Plaintiff argues that Defendant manifested assent to the Lease by signing, notarizing, and recording the Memorandum, which expressly state that the parties intended to be legally bound. (*See* ECF No. 65 at 19.) As such, the documents, when read together, are "unambiguous and speak for themselves." (*Id.* at 20.) Conversely, Defendant argues the Lease was merely part of preliminary negotiations that "required further manifestation of assent by Defendant." (ECF No. 63-1 at 12.) Specifically, Defendant argues that Defendant never executed or notarized the Lease, which was an express condition precedent to contract formation. (*Id.* at 13.)

As discussed more fully below, the Court finds that mutual assent existed. First, the Lease and Order of Payment must be construed together. Second, there was no condition precedent to contract formation based on the plain language of the Order of Payment. Third, the Lease was not merely a part of preliminary negotiations.

    1. <u>The Lease and Order of Payment must be construed together.</u>

The West Virginia Supreme Court of Appeals ("WVSCA") has explained that, "[i]t is a well-recognized principle of law that, even though writings may be separate, they will be construed together and considered to constitute one transaction when the parties are the same, the subject matter is the same and the relationship between the documents is clearly apparent. *Ashland Oil, Inc. v. Donahue*, 223 S.E.2d 433, 437 (W. Va. 1976) (collecting cases).

7

Here, the Lease and Order of Payment are agreements between the same parties. The subject matter of both documents is the same, which is the oil and gas agreement between Plaintiffs and Defendant. (*See* ECF Nos. 63-2, 63-5.) Additionally, the relationship between the documents is clearly apparent, as the Lease lays out the essential terms of the agreement, (*see* ECF No. 63-2), and the Order of Payment provides a potential bonus for the execution of the Lease, which is specifically referenced, (*see* ECF No. 63-5). Thus, the Lease and Order of Payment must be construed together.

    2.  <u>Defendant manifested assent to be bound to the Lease.</u>

"A meeting of the minds is a *sine qua non* of all contracts." *Riner v. Newbraugh*, 563 S.E.2d 802, 804 (W. Va. 2002). "The contractual concept of 'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Grp., Inc.*, 664 S.E.2d 751, 759 (W. Va. 2008) (citation omitted). For "mutual assent" to exist, "it is necessary that there be a[n] ... offer on the part of one party and an acceptance on the part of the other." *Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 450 (W. Va. 1993). "Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract." *Id.* at 450–51. Mutual assent "may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied." *Bailey*, 437 S.E.2d at 451.

An offer is "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Verizon West Virginia, Inc. v. West Virginia Bureau of Employment Programs,* 214 W.Va. 95, 586 S.E.2d 170, 205 n. 11 (W.Va.2003) (Davis, J., dissenting); *see also* 1 Corbin on Contracts, § 11 at 23 (1963) (defining an offer as "an expression by one party of his assent to certain definite

8

terms provided that the other party involved in the bargaining transaction will likewise express his assent to the identical same terms."). "An offer must be certain in its essential terms to create a power of acceptance." *Charbonnages de France v. Smith*, 597 F.2d 406, 417 (4th Cir.1979) (construing West Virginia law). In contrast, "a manifestation of willingness to enter into a bargain" will not constitute an offer if the person receiving the communication "knows or has reason to know" that the party manifesting a willingness to bargain "does not intend to conclude [the] bargain until he has made a further manifestation of assent." Restatement (Second) of Contracts, § 26 (1981). Such communications will constitute preliminary negotiations. *See id.*

Based upon these legal principles, the Court finds that Defendant manifested assent to bind itself to the Lease and, thus, the Order of Payment. To start, the Lease specifies the parties, the subject land, the amount in consideration, the duration of the lease, the rights granted, royalty payments, specific rights and obligations, procedures for filing notice of default and breach, etc. (*See* ECF No. 63-2.) As such, the essential terms of the Documents were certain enough to create a power of acceptance for the Plaintiffs. *See Smith,* 597 F.2d at 417.

Further, as Plaintiffs argue, the Memorandum, which Defendant signed and notarized, provides that Plaintiffs, as lessors, and Defendant, as lessee, "have entered into that certain Lease," and, "intending to be legally bound, hereby publish and give notice of the tenancy and estate(s) created, and certain of the rights granted by and obligations under the Lease as follows[.]" (ECF No. 63-4.) Defendant acknowledges its intent to be legally bound by the Memorandum but reasons that "to be legally bound to the publishing of its rights to a leasehold estate . . . does not equate to an obligation to pursue the contractual terms contained within the Subject Leases . . . [.]"[2] (ECF

---

[2] Defendant also argues that to be legally bound to the publishing of its rights to a leasehold estate does not equate to an obligation "to be bound to the bonus payment obligations under a document it never signed[.]" However, as discussed above, the Lease and Order of Payment must be construed together. Thus, if Defendant is bound by the Lease, it is also bound by the Order of Payment.

No. 71 at 8 n. 10.) That may be true, but Defendant recorded the Memorandum under West Virginia Code Section 40-1-8, which specifies that "[s]uch memorandum shall *constitute notice of only the information contained therein*." W. Va. Code § 40-1-8 (emphasis added). And the very first line of the Memorandum states that its purpose is "to *indicate the existence* of a PAID-UP OIL AND GAS LEASE," which was "*effective for all purposes* as of the date set out below[.]" (ECF No. 63-4 (emphasis added).) Thus, Defendant gave the world—including Plaintiffs—notice of the existence of an effective Lease. If not "direct evidence of an actual agreement" this language constitutes "indirect evidence through facts from which an agreement may be implied." *Bailey*, 437 S.E.2d at 451. As such, Plaintiffs were justified in believing that Defendant intended to be bound to the Lease, *Verizon West Virginia, Inc.*, 586 S.E.2d at 205 n. 11, and this mutual assent, combined with the competent parties, legal subject-matter, and valuable consideration constitutes a valid and enforceable contract in West Virginia. *See Ways*, 589 S.E.2d at 44.

Defendant also argues that "[i]n exchange for $10 consideration, each Plaintiff granted Defendant rights to a real property (leasehold) interest," but "the signing, notarizing, and recording of the Subject Memoranda did not magically forfeit the language in the Subject Orders of Payment which allowed Defendant to review Plaintiffs' title under the Subject Leases and conditioned bonus payments[.]" (ECF No. 71 at 10.) Specifically, Defendant claims that the Order of Payment contained a condition precedent that required a further manifestation of assent by Defendant before the contract was formed—namely management approval of the fully executed and notarized lease. (ECF No. 63-1 at 16.) Thus, Defendant contends that this alleged condition precedent established that the Documents were "preliminary negotiations which, *if consummated*, would have resulted in fully executed and notarized Subject Leases." (ECF No. 68 at 13.)

It is true that, "[i]n negotiating a contract[,] the parties may impose any condition

precedent, the performance of which is essential before they become bound by the agreement; in other words, there may be a condition precedent to the existence of a contract." *Miners' & Merchants' Bank v. Gidley*, 144 S.E.2d 711, 715 (W. Va. 1965) (citing 17 Am. Jur. 2d, Contracts, Section 24); *see also Fultz v. Connelly*, 80 S.E.2d 438 (W. Va. 1954) ("Where a contract negotiated by agent is made subject to confirmation or approval by the principal, the contract is not binding on the principal until he confirms or approves it."). However, the plain language of the Order of Payment does not support Defendant's argument:

> **On and subject to approval** of the fully executed and notarized Oil and Gas Lease herewith ("Oil and Gas Lease") **by the management** of [Defendant] **and upon and subject to further approval of Payee's title and rights** thereunder by [Defendant], **[Defendant] will tender payment to payee** (whether one or more) in the amount specified below by bank check, within ninety (90) business days of the date of this Order of Payment.

(ECF No. 63-5 (emphasis added).)

Unlike *Kerns*,[3] which Defendant cites for support, the Lease *itself* is not subject to these conditions. Defendant apparently recognizes this, as it claims that the Order of Payment contained language "that *alerted* Plaintiffs that Defendant did not intend to conclude the bargain until it had made a further manifestation of assent." (*See* ECF No. 71 at 14 (emphasis added).) Thus, Defendant seems to suggest that the existence of the condition precedent *implies* that the Lease was not fully executed. The Court disagrees.

The WVSCA has warned that, "[w]hile a valid contract may be made between parties by memorandum, telegrams, and correspondence, care should be taken not to construe as an agreement that which the parties only intended to be a preliminary negotiation." *Blair v. Dickinson*, 54 S.E.2d 828, 844 (W. Va. 1949). The issue can be stated succinctly as, whether a

---

[3] *Kerns v. Range Res.-Appalachia, LLC*, No. 1:10CV23, 2011 WL 197908 at *5 (N.D. W. Va. Jan. 18, 2011) ("[I]f the plaintiffs '[remained] interested in leasing [their] property[ ] Range would consider entering into a five (5) year term delay rental *lease* with a lease date commencing in early 2009.").

final written draft is viewed "merely as a convenient memorial" of an already agreed to contract versus "the consummation of the negotiation." *Id.* at 844 (citations omitted); *see also Cabot Oil & Gas Corp. v. Daugherty Petroleum, Inc.*, 479 F. App'x 524, 529 (4th Cir. 2012) (noting that the parties' correspondence did not create a binding agreement in the absence of a formal written contract because the parties manifested their mutual intention to memorialize any agreement in a formal written contract). The WVSCA has identified six factors that can aid in ascertaining which view was held by the parties: (1) whether the contract is of the type usually in writing; (2) whether the contract needs to be a formal writing for its full expression; (3) whether it has many or few details; (4) whether the value of the contract is large; (5) "whether it is a common or unusual contract"; and (6) "whether the negotiations themselves indicate a written draft is contemplated as a final conclusion of the negotiations." *Blair*, 54 S.E.2d at 844 (citations omitted).

Here, the *Blair* factors indicate that the Lease and Order of Payment were not preliminary negotiations. As to the first and second factors, an oil and gas lease is of the type "usually found to be in writing," one that often required "a formal writing for its full expression." *Blair*, 54 S.E.2d at 844. Further, the Lease is a formal writing detailing the parties' full expression, as discussed above. Similarly, as to the third factor, the Lease and Order of Payment fully encompass the numerous details and terms the parties had to agree to in order to successfully close the contract. (*See* ECF Nos. 63-2, 63-5.) In fact, although the Order of Payment contained certain conditions, it also provided for what was to occur if those conditions were not met. (*See* ECF No. 63-5.) As such, there were no outstanding issues to be finalized by the parties before the parties could complete a binding contract. And, as to the sixth factor, the Lease and Order of Payment do not indicate a different document was contemplated as a final conclusion of negotiations. *Blair*, 54

S.E.2d at 844. Indeed, Defendant conceded that another document would not be needed if the conditions were met. (*See* ECF No. 63-8 at 65:24-66:4.)

Accordingly, there was a valid and enforceable contract.

B. *Breach of Contract*

Alternatively, Defendant argues that the undisputed facts show that Defendant has in no way breached any obligation it had to tender bonus payments to the Plaintiffs because its management did not approve the Lease, which was an express condition precedent. (ECF No. 63-1 at 17-18.) Whereas Plaintiffs aver that this condition precedent is "a figment of Defendant's imagination" because "[n]owhere in the Order of Payment does the phrase 'condition precedent' appear, express or otherwise." (ECF No. 69 at 24.). Plaintiff also argues that the Lease did receive management approval because Defendant signed, notarized, and recorded the Memorandum, which "had the same legal effect of approval of the fully executed and notarized Oil and Gas Lease[] as contemplated by the Order[] of Payment." (*Id*. at 29.)

It is a basic contract principle that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syllabus Point 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962). And, "[u]nder the broad liberty of contract allowed by law, parties may make performance of any comparatively, or apparently, trivial and unimportant covenant, agreement, or duty under the contract a condition precedent, and in such case, the contract will be enforced or dealt with as made." *Mimi's Inc. v. BAI Riverwalk, L.P.*, No. 18-0775, 2020 WL 1487804, at *4–5 (W. Va. Mar. 23, 2020) (internal quotations and citations omitted). No particular form of words is necessary in order to create an express condition, *Beattie-Firth, Inc. v. Colebank*, 105 S.E.2d 5, 7 (W. Va. 1958), because a

13

condition precedent is not a question of phrase or form but of the intention of the parties, *Gidley*, 144 S.E.2d at 715 (citations omitted).

In this case, the plain language of the Order of Payment clearly conditions the bonus payment "[o]n and subject to approval of the fully executed and notarized Oil and Gas Lease herewith ("Oil and Gas Lease") by the management of [Defendant]," (ECF No. 63-5), even if the specific words "condition precedent" are not used, *see Colebank*, 105 S.E.2d at 7. Importantly, the Order of Payment does not specify what "management approval" is. (ECF No. 63-5). However, the Court need not make that determination based on the plain language of the Order of Payment. Specifically, Defendant was not obligated to tender bonus payments because the Lease was never "fully executed and notarized," as Defendant never signed or notarized it.

Plaintiffs argue that this interpretation "improperly read[s] into the Order of Payment that Defendant must execute and notarize the Lease as proof of its 'management approval.'" (ECF No. 69 at 30.) The Court disagrees. Rather, Defendant's management could not approve "the fully executed and notarized" Lease if the Lease was, in fact, never fully executed or notarized.

Additionally, the signed and notarized Memorandum does not have the same legal effect as if the Lease was fully executed and notarized, as the Order of Payment contemplated. As discussed above, the Lease was binding due to the Memorandum. By definition, something *binding* "ha[s] legal force to impose an obligation." BINDING, Black's Law Dictionary (11th ed. 2019); *see also* CONTRACT, Black's Law Dictionary (11th ed. 2019) (defining a binding contract as an agreement that "create[es] obligations that are enforceable"). However, simply because the Lease was binding does not mean that it was "fully executed and notarized," as an *executed* document is "one that has been signed." EXECUTED, Black's Law Dictionary (11th ed. 2019). While the term "executed" may also mean a contract "that has been fully performed by both

parties," *id.*, Plaintiffs have conceded that Defendant did not perform under the contract by claiming Defendant breached the contract.

Additionally, the Memorandum was filed in accordance with West Virginia Code Section § 40-1-8, which specifies that "[s]uch memorandum shall constitute notice of *only the information contained therein*." W. Va. Code § 40-1-8, and the Memorandum specifically states that "THIS MEMORANDUM OF LEASE IS NOT A COMPLETE SUMMARY OF SAID PAID-UP OIL AND GAS LEASE[.]" (ECF No. 63-4.) As such, it could not be fully executed by virtue of the Memorandum. Further, although the Memorandum indicates that the Lease was executed, (*see, e.g.*, ECF No. 63-4 at 39 ("the existence of a PAID-UP OIL AND GAS LEASE (hereinafter 'Lease') executed the 26 day of April, 2018")), the plain language of the Order of Payment still requires the Lease to be fully notarized, which it was not. (*See* ECF No. 63-4.). As such, the Memorandum did not satisfy the requirement for a fully executed and notarized Lease.

Although the Court recognizes Plaintiffs' policy concerns, the freedom to contract is "the paramount public policy" and parties "of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice." *State v. Memorial Gardens Development Corp.*, 101 S.E.2d 425, 430 (W. Va. 1957) (quoting *Baltimore & Ohio Southwestern Railway Co. v. Voigt*, 176 U.S. 498, 20 S.Ct. 385, 387, 44 L.Ed. 560 (1900)). Thus, "[t]he judicial power to declare a contract void as contravening sound public policy is a very delicate and undefined power, and should be exercised only in cases free from doubt," Syllabus Point 1, *Barnes v. Koontz*, 112 W.Va. 48, 163 S.E. 719 (1932) (internal citation omitted). Here, the Court is not free from doubt as Plaintiffs were competent parties who knowingly entered into an unambiguous

15

contract.[4]  Thus, the Court will enforce the plain language of the contract.

Accordingly, for all these reasons, the Court finds that Defendant did not breach its contractual duty because the condition precedent to Defendant's obligation to tender bonus payments was not satisfied.[5]

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion, (ECF No. 63), and **DENIES** Plaintiffs' Motion, (ECF No. 64).  Thus, summary judgment is **GRANTED** for Defendant on Plaintiffs' Count I claim for breach of contract.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     January 27, 2022

THOMAS E. JOHNSTON, CHIEF JUDGE

---

[4] Although this case teeters on the "darker side of the oil and gas leasing industry," *see Chesapeake Appalachia, L.L.C. v. Hickman*, 781 S.E.2d 198, 219 (W. Va. 2015), the present facts are distinguishable from *Hickman*. Without the payment of the up-front bonus, the plaintiff in *Hickman* received no consideration, which is an essential element of contract formation. *Hickman*, 781 S.E.2d at 220. By contrast, Plaintiffs in this case received ten dollars in consideration, (*see* ECF No. 63-5), which constitutes valuable consideration under West Virginia law, *see, e.g.*, *South Penn Oil Co. v. Snodgrass*, 76 S.E. 961 (W. Va. 1912) (consideration of $1.00).

[5] Because the condition precedent was not satisfied, the Court need not consider Defendant's argument relating to the alleged condition subsequent.  (*See* ECF No. 63-1 at 21.)