**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

MICHAEL BENSON, et al.,

        Plaintiffs,

v.                                        CIVIL ACTION NO.   5:20-cv-00229

HIGH ROAD OPERATING, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant High Road Operating, LLC's ("Defendant") Motion for Judgment on the Pleadings.  (ECF No. 75.)  For the reasons discussed more fully below, the motion is **GRANTED**.

### I.    BACKGROUND

This matter arises out of a dispute concerning an oil and gas agreement between each respective Plaintiff and Defendant.  Between April 26, 2018, and May 11, 2018, Plaintiffs each signed, *inter alia*, the following documents: (1) Paid-Up Oil and Gas Lease ("Lease"), (2) Order of Payment – Oil & Gas Lease Bonus ("Order of Payment"), and (3) Memorandum of Lease ("Memorandum").[1]  (ECF Nos. 63-2, 63-5, 63-4.)  Defendant submitted each Memorandum for

---

[1] As discussed more fully below, the Court applies the same standard for a motion for judgment on the pleadings under Rule 12(c) as it would for a motion to dismiss under Rule 12(b)(6).  *See Drager v. PLIVA USA, Inc*., 741 F.3d 470, 474 (4th Cir. 2014).  Under Rule 12(d), if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).  However, a court may consider extrinsic evidence at the 12(b)(6) stage if such evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  Here, the Lease, Order of Payment, and Memorandum were all explicitly referenced and integral to the

1

recording in Ohio County, West Virginia on the following dates: May 10, 2018, May 25, 2018, June 6, 2018, June 12, 2018, and June 22, 2018.[2]  (ECF No. 63-4.)

The Lease required that Defendant, as lessee, pay Plaintiffs, as lessors, ten dollars ($10.00) "and other good and valuable considerations" in exchange for certain mineral rights. (ECF No. 63-2 at 1.)  Among other provisions, the Lease allowed Defendant, as lessee, to surrender the Lease, "at any time . . . by tendering an appropriate instrument of surrender" to Plaintiffs, as lessors.  (*Id.* at 3.)  The Lease also acknowledges that Plaintiffs, as lessors, "agree[ ] that a Memorandum may be filed," by Defendant, as lessee, "detailing the relevant provisions of this Oil and Gas Lease." (*Id.* at 4.)

The Memorandum's stated purpose was "to indicate the existence of a PAID-UP OIL AND GAS LEASE," which was "effective for all purposes as of the date set out below[.]"  (ECF No. 63-4.)  It further provides that Plaintiffs, as lessors, and Defendant, as lessee, "have entered into that certain Lease," and have "executed, acknowledged, and delivered this Memorandum of Lease in accordance with W. Va. Code § 40-1-8[.]"  (*Id.*)  Additionally, the Memorandum states that the parties, "intending to be legally bound, hereby publish and give notice of the tenancy and estate(s) created, and certain of the rights granted by and obligations under the Lease as follows," and, *inter alia*, list that "[s]aid Lease shall be in force for a primary term of five (5) years from the effective date of the Lease . . . ."  (*Id.*)

The Order of Payment required Defendant to tender an oil and gas lease bonus of $6,500

---

Complaint because they "give[] rise to the legal rights asserted" by Plaintiffs.  *See Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014).  Thus, the Court can consider these documents at this juncture without converting the pending motion for judgment on the pleadings into a motion for summary judgment.

[2] As each respective Lease, Memorandum, and Order of Payment are substantially the same, the Court will refer to these documents as applying generally to each Plaintiff.

per net mineral acre in connection with the Lease to Plaintiffs.  (ECF No. 63-5.)  This bonus was to be tendered "within ninety (90) business days of the date of th[e] Order of Payment."  (*Id.*)  However, this bonus was "[o]n and subject to approval of the fully executed and notarized Oil and Gas Lease . . . by the management of [Defendant] . . . and upon and subject to further approval of [Plaintiffs'] title and rights thereunder by [Defendant][.]"  (*Id.*)

Defendant never tendered bonuses to Plaintiffs.  (*See* ECF No. 1 at 8, ¶ 46.)  Plaintiffs later entered into a replacement lease agreement with another company, SWN Production Company, LLC, ("SWN") and secured $4,500 per acre for a bonus consideration.  (*Id.* at 9, ¶ 52-53.)

Plaintiffs then initiated this action in the Northern District of West Virginia on October 19, 2020.[3]  (ECF No. 1.)  The Complaint stated three causes of action for (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Slander of Title. (Id. at 8-10.)  On January 27, 2022, this Court dismissed Plaintiffs' cause of action for breach of contract, finding that, although the parties had a valid and enforceable contract, Defendant did not breach that contract by failing to tender the bonuses to Plaintiffs because a condition precedent was not satisfied.  (*See* ECF No. 73.)  Thus, only the second and third counts remain.

Defendant filed the pending Rule 12(c) motion on February 11, 2022.  (ECF No. 75.)  Plaintiffs filed a timely response, (ECF No. 78), and Defendant filed a timely reply, (ECF No. 80).  As such, this motion is fully briefed and ripe for adjudication.

## II.     LEGAL STANDARD

"[T]he Rule 12 (c) judgment on the pleadings procedure primarily is addressed to . . .

---

[3] On November 6, 2020, the undersigned judge was designated and assigned to hear this case pursuant to 28 U.S.C. § 292(b).

dispos[e] of cases on the basis of the underlying substantive merits of the parties' claims and defenses as they are revealed in the formal pleadings." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004). A motion under 12(c) is useful when only questions of law remain. *Id.*

> [A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute . . . and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, [and] whatever is central or integral to the claim for relief or defense . . . .

*Id.*

When presented with a motion under Rule 12(c) of the Federal Rules of Civil Procedure, the Court applies the same standard as it would when presented with a motion to dismiss pursuant to Rule 12(b)(6). *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012); *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F.Supp.2d 694, 706 n.17 (S.D. W. Va. 2009) ("[T]he standards under Federal Rule of Civil Procedure 12(c) for a motion for judgment on the pleadings are identical to those applicable to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss."); *W. Va. Auto & Truck Dealers Ass'n v. Ford Motor Co.*, 2014 WL 2440406, at *3 (N.D. W. Va. May 30, 2014) (Keeley, J.) ("The only difference between a Rule 12 (c) motion and a Rule 12(b)(6) motion is timing.").

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain

4

"enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  In applying this standard, a court must utilize a two-pronged approach.  First, it must separate the legal conclusions in the complaint from the factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged."  *Id.*  Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555, 570.

### III.   DISCUSSION

Defendant filed the pending Rule 12(c) motion, arguing that Plaintiffs have failed to state claims for breach of the implied covenant of good faith and fair dealing and slander of title.  (ECF No. 75-1 at 1.)  Defendant also contends that Plaintiffs' slander of title claim is untimely because it was filed outside the statute of limitations.  (*Id.*)  Each is discussed below.

### A. *Matters outside of the pleadings*

As an initial matter, Defendant's arguments rely on the Court's findings and holdings in its Memorandum Opinion and Order, in which the Court granted Defendant's Motion for Summary Judgment on Plaintiffs' breach of contract claim.  (*See* ECF No. 73 at 13-16.)  Generally, on a motion under Rule 12(c), if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P.

5

12(d). However, there is "a narrow exception to the principle embodied in Rule 12(d) that allows a court to consider facts and documents subject to judicial notice without converting the motion into one for summary judgment." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Under the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

In this instance, the Court's findings cannot be reasonably disputed, and the accuracy of the Court's docket cannot be reasonably questioned. *See, e.g.*, *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir.1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); *see also Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (Mem.), 2016 WL 2609617 (4th Cir. May 6, 2016) (advising that courts may "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment."); *Johnson v. James B. Nutter & Co.*, 438 F. Supp. 3d 697, 704 (S.D. W. Va. 2020) (Chambers, J.) (citing *Brown*). Thus, the Court can take judicial notice of its findings and holdings from its previous Memorandum Opinion and Order.

B. *Breach of the implied covenant of good faith and fair dealing*

In Count II of the Complaint, Plaintiffs claim that Defendant breached the implied covenant of good faith and fair dealing ("GFFD") applicable "through its dealings with the Plaintiffs as described herein," *i.e.*, Defendant's failure to tender the bonus payment. (*See* ECF No. 1 at 10, ¶¶ 60-61.) Defendant contends that it is entitled to judgment on the pleadings on this claim because a claim for breach of the implied covenant of GFFD cannot survive absent a valid claim

6

for breach of contract, and the Court already found that Defendant did not breach its contract with Plaintiffs by not tendering the bonus payment.  (*See* ECF No. 75-1 at 6.)

To that extent, West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." *Stand Energy Corp. v. Columbia Gas Transmission*, 373 F.Supp.2d 631, 644 (S.D. W. Va. 2005) (quoting *Hoffmaster v. Guiffrida*, 630 F.Supp. 1289, 1291 (S.D. W. Va. 1986)).  The covenant requires "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."  *Barn-Chestnut, Inc. v. CFM Dev. Corp.*, 193 W.Va. 565, 457 S.E.2d 502, 508 (1995) (quoting *Ashland Oil, Inc. v. Donahue*, 159 W.Va. 463, 223 S.E.2d 433, 440 (1976)) (discussing the covenant in the context of agreements governed by the Uniform Commercial Code). However, the Supreme Court of Appeals of West Virginia ("WVSCA") has "'declined to recognize an independent claim for a breach of the common law duty of good faith,' and has instead held that such a claim sounds in breach of contract."  *Corder v. Countrywide Home Loans, Inc.*, No. 2:10-0738, 2011 WL 289343, at *3 (S.D. W. Va. Jan. 26, 2011) (quoting *Doyle v. Fleetwood Homes of Va.*, 650 F. Supp. 2d 535, 541 (S.D. W. Va. 2009)).  Thus, West Virginia law does not recognize an independent cause of action for the breach of an implied covenant of good faith and fair dealing separate and apart from a breach of contract claim.  *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005).  And "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract."  *Barn-Chestnut, Inc. v. CFM Dev. Corp.*, 457 S.E.2d 502, 509 (W. Va. 1995).

Yet, in response, Plaintiffs assert that *Evans v. United Bank, Inc.*, 775 S.E.2d 500 (W. Va.

2015), constitutes authority for the proposition that a claim for a breach of implied covenant of GFFD can be maintained so long as a breach of contract claim was originally asserted.  (*See* ECF No. 78 at 6-8.)  Plaintiffs simply provide a long blockquote without any independent analysis.  (*See id.*)  Then, Plaintiffs conclude that their claim for a breach of the implied covenant of GFFD survives dismissal because they originally alleged a breach of contract, which was dismissed based on a "unique technicality."  (*See id.* at 8.)  This argument is unpersuasive.

To start, *Evans* provides little insight on the matter.  In *Evans*, the WVSCA reiterated that plaintiffs cannot pursue a claim for breach of the implied covenant of GFFD where they failed to allege breach of contract.  775 S.E.2d at 509.  However, contrary Plaintiffs' interpretation, this holding is not so broad as to support the proposition that a claim for breach of implied covenant of GFFD can outlive a failed breach of contract claim simply because the breach of contract claim was originally asserted.  Nor does it stand for the proposition that a breach of the implied covenant of GFFD can survive depending on the reason the breach of contract claim was dismissed.

Rather, the WVSCA has consistently held that the implied covenant of GFFD "does not provide a cause of action *apart* from a breach of contract claim."  *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 578 (W. Va. 2013) (internal citation omitted) (emphasis added) (affirming summary judgment on GFFD claim where trial court had "proper[ly] grant[ed] . . . summary judgment to the contract-based claims"); *Highmark West Virginia, Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007).  This Court has also made clear that, because a claim for breach of the common law duty of GFFD must be brought with an express breach of contract claim, "this claim will *live or die* by the [express breach of contract] claim in [the same complaint]."  *Clendenin v. Wells Fargo Bank, N.A.*, No. 2:09-00557, 2009 WL 4263506, at *5

8

(S.D. W. Va. Nov. 24, 2009) (emphasis added) (holding that the claim for breach of the covenant of good faith and fair dealing must be dismissed because the breach of contract claim was dismissed); *see also Cavcon, Inc. v. Endress + Hauser, Inc.*, 557 F.Supp.2d 706, 729 (S.D. W. Va. 2008) (underscoring the well-established principle that no cause of action for breach of the duty of GFFD may lie where no breach of contract exists); *Corder v. Countrywide Home Loans, Inc.*, No. CIV.A. 2:10-0738, 2011 WL 289343, at *3 (S.D. W. Va. Jan. 26, 2011). Federal Courts in the Northern District of West Virginia have come to the same conclusion. *See Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731 (N.D. W. Va. 2012), *aff'd sub nom. Wittenberg v. First Indep. Mortg. Co.*, 599 F. App'x 463 (4th Cir. 2013); *Culley-Brown v. Am. Petroleum Partners, LLC*, No. 5:21-CV-94, 2021 WL 6882398, at *3 (N.D. W. Va. Oct. 26, 2021). Thus, because the Court has dismissed Plaintiffs' breach of contract claim, their claim for breach of the implied covenant of GFFD cannot survive on its own.

Accordingly, Count II for breach of the implied covenant of good faith and fair dealing is **DISMISSED**.

   C. *Slander of title*

The WVSCA has identified the six elements for the tort of slander of title claim as: "(1) publication of (2) a false statement (3) derogatory to plaintiff's title (4) with malice (5) causing special damages (6) as a result of diminished value in the eyes of third parties." Syl. Pt. 3, *TXO Production Corp.*, 419 S.E.2d 870 (1992). In this case, the publication in question, under the first element, is the Memorandum. (*See* ECF No. 1 at 10, ¶ 63.) However, Defendant argues that Plaintiff has not and/or cannot meet the second, fourth, and fifth elements. (*See* ECF No. 75-1). Each is discussed below.

      1. *A "false" statement*

9

For the second element, the Complaint alleges that the Memorandum was "false after the time that [Defendant] breached its payment obligations to the Plaintiffs." (ECF No. 1 at 11, ¶ 68.) In the pending motion, Defendant mainly argues that the Memorandum was not false because it did not breach its payment obligations.[4] Using the Court's previous findings, Defendant reiterates that, in exchange for $10 consideration, each Plaintiff granted Defendant their mineral rights, and Defendant simply recorded the Memorandum to put the world on notice of that conveyance. (*See* ECF No. 75-1 at 11.) Defendant also restates that it was not required to tender the bonus payments to Plaintiffs because an express condition precedent was not met. (*Id.* at 12.) Further, Defendant argues there was nothing false about the Memorandum because this Court found that the parties had a legally binding contract, and the Memorandum simply states that its purpose is to indicate the existence of the subject leases. (*Id.* at 13.)

Conversely, Plaintiffs argue that the Memorandum was false when it was originally published. Plaintiffs point to the first line of the Memorandum, which reads: "This MEMORADUM OF LEASE, used to indicate the existence of a PAID-UP OIL AND GAS LEASE . . . executed the [26] day of [April], 2018 . . . by and between [Plaintiff and Defendant]." (ECF No. 63-4 at 1.) Plaintiffs also recall that the Court found that Defendant never fully executed the Lease. (ECF No. 78 at 13.) Thus, Plaintiffs argue that Defendant "published this false statement full well knowing it was never 'intending to be legally bound' to anything as it represented in the Memoranda of Leases."[5] (*Id.* at 13-14.) Plaintiffs claim that this "false statement" allowed

---

[4] Defendants also assert that the publication must be false "at the time of recording," which "Plaintiffs do not and cannot argue." (ECF No. 75-1 at 13.) This is discussed in more depth below but is not needed for the present analysis.

[5] Plaintiffs also provide excerpts from depositions that tend to show that Defendant published the Memorandum before it decided whether to fully execute the lease. However, the Court cannot consider this evidence on a 12(c) motion.

Defendant "to escape any obligation to pay" the bonus to Plaintiffs. (*Id.* at 14.)

Regardless of the substantive merits of this argument,[6] a party cannot amend a complaint in a response in opposition to a motion for judgment on the pleadings. *Greene v. Ballard*, No. 2:17-CV-02897, 2020 WL 1482568, at *2 (S.D. W. Va. Mar. 27, 2020), *appeal dismissed*, 823 F. App'x 204 (4th Cir. 2020) (stating that it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Exec. Risk Indem., Inc.*, 681 F.Supp.2d at 706 n.17 (explaining that standards under Rule 12(c) are identical to those under Rule 12(b)(6)). And, ultimately, the Complaint did not allege that the Memorandum was false when it was published—or any time afterward—based on the fact that Defendant did not execute the Lease.

Instead, the factual allegations in the Complaint allege that Defendant recorded the Memorandum. (ECF No. 1 at 10, ¶ 63.) But after the expiration of the due diligence time period, Defendant failed to pay Plaintiffs the negotiated bonus. (*Id.* at ¶ 64). Then, Defendant left the Memorandum on record for several additional weeks/months "beyond the time the Plaintiffs *should have received their required bonus*," i.e., "beyond the time that [the Memorandum] *should have been on record*." (*Id.* at ¶¶ 65-67 (emphasis added).) And the Memorandum was "false *after the time* [Defendant] breached its payment obligations." (*Id.* at 11, ¶ 68 (emphasis added)). Plaintiffs' slander of title claim is completely devoid of any factual allegations related to Defendant's failure to execute the lease.[7] Rather, it seems clear that the Complaint asserts that

---

[6] Defendant replies that Plaintiffs' argument makes it clear that their slander of title claim "is simply a re-hash of their (now dismissed) breach of contract claim." (ECF No. 80 at 8.)

[7] The Complaint does allege that Defendant published the Memorandum "when [Defendant] knew or should have known that it did not hold any valid or enforceable interest in or to the Plaintiffs' mineral rights." (ECF No. 1 at 11, ¶ 69.) Viewing this factual allegation in the light most favorable to Plaintiffs, it could be viewed as an allegation that Defendants published the Memorandum even though it knew or should have known the Lease was not executed. However, the Court has already found that the parties had a legally binding contract. (ECF No. 73.) Thus, Defendant did have a valid and enforceable interest in or to Plaintiffs' mineral rights, regardless of whether the Lease was fully executed.

11

the Memorandum was not false until Defendant breached its payment obligations, which, as the Court has found, did not occur.

Thus, the Complaint's factual allegations do not make a plausible showing that the Memorandum was false.

*2. Malice*

"Malice requires 'an intent to injure through the publication of false or misleading defamatory statements known by the publisher or its agents to be false, or an intent to injure through publication of such defamatory statements with reckless and willful disregard for their truth.'" *Baker v. Chesapeake Appalachia, LLC*, 2013 WL 1910378, at *3 (N.D. W. Va. May 8, 2013) (Stamp, J.) (quoting *Sprouse v. Clay Communication, Inc.*, 211 S.E.2d 674, 681–82 (W. Va. 1975)). "The state of mind necessary to sustain a slander of title suit, however, is something more grave than poor judgment." *GMO Forestry Fund 3, L.P. v. Ellis*, 2006 WL 8438256, at *3 (S.D. W. Va. Sept. 14, 2006), *aff'd*, 337 F. App'x 279 (4th Cir. 2009). But the question of malice is ordinarily one for the jury. *Hunter v. Beckley Newspapers Corp.*, 40 S.E.2d 332, 338 (W. Va. 1946).

Here, the Complaint alleges that Defendant's alleged false statement "was done with malice" because Defendant "intent[ed] to deceive the Plaintiffs . . . as to the mineral leasehold status of the Plaintiffs' mineral interests . . . when [Defendant] knew or should have known that it did not hold any valid or enforceable interest in or to the Plaintiffs' mineral rights." (ECF No. 1 at 11, ¶ 69.) Taken as true and viewed in the light most favorable to Plaintiffs, this factual allegation makes a plausible showing that the Memorandum was published with malice.

However, in the pending motion, Defendant argues that the fact that Plaintiffs signed the Memorandum, which was a "joint statement[]," "negat[es] any possibility of malice" because

12

"Plaintiffs gave express permission" for the recording of the Memorandum. (ECF No. 75-1 at 13-14.) In response, Plaintiffs argue that Defendant's argument "is incorrect," because their actions had no bearing on Defendant's *mens rea*.[8] (*See* ECF No. 78 at 16.) The Court agrees with Plaintiffs.

Defendant initially cites to *Cairelli v. Brunner*, No. 18 AP 000164, 2019 WL 2005922, at *5 (Ohio Ct. App. May 7, 2019) for the proposition that the slander of title occurs at the time of publication. (ECF No. 75-1 at 13.) Then, based on this principle, Defendant uses *Cairelli* to argue that if a plaintiff signs his or her name to a document, he or she cannot later claim that it was false or that the statements therein were slanderous or made with malice. (*Id.*) However, the *Cairelli* court never discussed the malice element for a slander of title claim. Instead, it clearly held that because the Memorandum of Lease in question was "executed by Appellant and Appellees . . . *a valid lease existed* and th[e] statements made therein *were not false*." *Cairelli*, 2019 WL 2005922, at *5 (emphasis added). Further, the *Cairelli* court's reasoning was based on the fact that, under Ohio law, the statute of limitations in a slander of title actions runs "from the time the alleged offending document is filed with the recorder." *Smith Elec. v. Rehs*, No. 18433, 1998 WL 103334, at *2 (Ohio Ct. App. Feb. 18, 1998). Under West Virginia law, though, the statute of limitations for a claim of slander of title begins to run when the tort is complete.[9] Thus, this legal authority is not persuasive.

At bottom, this Court could not find any legal authority that discusses—not to mention

---

[8] Plaintiffs also rely on deposition excerpts, which allegedly demonstrate that Defendant knew it had not signed/executed the Lease and that Plaintiffs had no reason to know that the Lease was not signed/executed. (*See* ECF No. 78 at 16-17.) However, the Court cannot consider this evidence on a 12(c) motion.

[9] Claims controlled by the statute of limitations period prescribed by West Virginia Code § 55–2–12 accrue in most cases when the completed tort occurs. *See, e.g.*, *Chemtall Inc. v. Madden*, 607 S.E.2d 772, 784 (W. Va. 2004).

13

supports—Defendant's proposition. Instead, it seems evident that a defendant can act maliciously even if the plaintiff, who is unaware of the defendant's ill intentions, approves of the defendant's actions. Thus, based on the factual allegations in the Complaint, Plaintiffs have plead sufficient facts to establish malice.

### 3. Special Damages

Special damages are those that "are not the 'ordinary result' of the conduct alleged." *Carnell Const. Corp. v. Danville Redevelopment & Housing Authority*, 745 F.3d 703, 725 (4th Cir. 2014); *accord Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1226 (7th Cir.1995) (defining special damages as "damages that are unusual for the type of claim in question—that are not the natural damages associated with such a claim"). Under the Federal Rules of Civil Procedure, special damages "must be specifically stated." Fed. R. Civ. P. 9(g). In pleading special damages, there is no distinction between cases in which special damage is essential to the cause of action and cases in which a cause of action exists irrespective of special damage. *Stevenson v. Hearst Consol Publications*, 214 F.2d 902 (2d Cir. 1954), *cert. denied*, 348 U.S. 874 (1954). Rather, "[t]he primary purpose of Rule 9(g) is . . . to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint." *Carnell Const. Corp.*, 745 F.3d at 725 (internal quotations and citations omitted).

In the pending motion, Defendant argues that Plaintiffs have "failed to bring forward any actual evidence in the form of expert testimony or otherwise to establish special damages." (ECF No. 75-1 at 14.) According to Defendant, *TXO Prod. Corp.* "requires a showing of special damages[.]" (*Id.* (internal quotations and citations omitted).) However, contrary to Defendant's assertion, Plaintiffs do not have to offer *evidence* of special damages under the Rule 12(c) standard. *TXO Prod. Corp.* offers no support for this assertion, either. *See generally*, *TXO Production*

14

*Corp.*, 419 S.E.2d 870.

Still, special damages must be specifically pleaded, which Plaintiffs did not do. The Complaint simply alleges that the Memorandum's publication "resulted in special damages including . . . the diminished value of the Plaintiffs' mineral interests and/or real estate[.]" (ECF No. 1 at 11, at ¶ 70.) Importantly, Plaintiffs do not allege how much their mineral interests and/or real estate allegedly diminished in value. *See Carnell Const. Corp.*, 745 F.3d at 725 (holding that the plaintiff failed to adequately plead special damages in connection with its breach of contract claims where the breach of contract count "merely prayed for aggregate damages 'in an amount to be proven at trial but not less than $419,575, plus interest'").

In the response in opposition to Defendant's motion, Plaintiffs contend that "Plaintiffs were forced to seek out new leases" that provided a lower bonus consideration.[10] (ECF No. 78 at 17-18.) Admittedly, under their breach of contract claim, Plaintiffs allege that, after Defendant failed to pay Plaintiffs the $6,250 per net mineral acre bonus amount, (ECF No. 1 at 8, ¶ 50), Plaintiffs entered into new leases with SWN, but only received a $4,500 per mineral acre bonus, (*id.* at 9, ¶ 53-55). These factual allegations were reincorporated into Plaintiffs' slander of title claim. (*See id.* at 10, ¶ 62.)

However, this seems to be a different factual basis for special damages than the allegation in the Complaint that Plaintiffs' mineral interests and/or real estate diminished in value. (ECF No. 1 at 11, at ¶ 70.) Still, even if Plaintiffs' argument is supposed to support this allegation, it is unclear how the lower bonus payment reflects a diminished value in Plaintiffs' mineral interests and/or real estate.

---

[10] Plaintiffs again cite to deposition testimony for support, which cannot be considered.

15

>    To start, a bonus is not consideration for the actual value of the property:
>
>    A bonus ordinarily signifies a lump sum paid by the lessee to the lessor as a consideration for the execution of the lease. A bonus . . . is the cash consideration paid or agreed to be paid for the execution of the lease. Bonus is defined as a payment that is made in addition to royalties and rent as an incentive for a lessor to sign an oil-and-gas lease. Provision of a bonus consideration provides both a speculative and a certain inducement [to a landowner] to enter into the paid up lease, insofar as there is a chance to collect more by way of royalty payments.

*Chesapeake Appalachia, LLC v. Hickman*, 781 S.E.2d 198, 219 (W. Va. 2015) (internal quotations and citations omitted).

Further, the amount of the bonus is not necessarily based on the value of the property. Instead, as one treatise explains, the amount of the bonus is "[u]sually . . . a certain dollar amount per acre under [the] lease," and "not out of or contingent on the production of oil or gas." *Introduction to Bonus for Oil and Gas Leases*, 3A Summers Oil and Gas § 31:1 (3d ed. 2021). Thus, because a bonus is an incentive usually based on acreage, it is unclear how the published Memorandum affected the bonus Plaintiffs later received from SWN.

That is not to say that the Memorandum could not or did not affect the bonus amount Plaintiffs received from SWN. Rather, the fact of the matter is that Plaintiffs did not plead specific factual allegations to support this theory. Consequently, without any clear allegation as to how Plaintiffs' mineral interests and/or real estate was diminished or by how much, it cannot be said that Plaintiffs pleaded special damages with specificity.

Accordingly, Count III for slander of title is **DISMISSED**.[11]

### IV.   CONCLUSION

For these reasons, the Court **DISMISSES** Counts II and III of the Complaint. The Court

---

[11] Because Count III for slander of title is dismissed for failure to state a claim, the Court declines to consider Defendant's limitations argument.

16

further **DISMISSES** this matter **WITH PREJUDICE**.[12]   The Clerk is **DIRECTED** to remove this case from the active docket of this Court.

    **IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                                    ENTER:      June 15, 2022

                                    THOMAS E. JOHNSTON, CHIEF JUDGE

---

[12] As this case is dismissed, Defendant's pending Motion for Protective Order, (ECF No. 90), and Plaintiffs' pending Motion to Continue Trial and Vacate Scheduling Order, (ECF No. 127), are **DENIED AS MOOT**.